## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **INTELLECTUAL VENTURES II LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | **Civil Action No. 7:25-cv-00252-ADA** |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **SOUTHWEST AIRLINES CO.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

---

### DEFENDANT SOUTHWEST AIRLINES CO.'S RULE 12(b)(6) MOTION TO DISMISS

---

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ON THE PATENT ................................................................... 1

III. ARGUMENTS AND AUTHORITIES ................................................................ 4

A.  The '841 Patent Is Invalid Under § 101 ........................................................ 4

1. Claim 1 is directed to an abstract idea: remote hosting and monitoring ...................... 4

2. Claim 1 lacks an inventive concept. ................................................... 7

B.  Plaintiff May Not Recover Pre-Suit Damages ............................................... 10

C.  Plaintiff's Direct Infringement Claim is Implausible .................................... 11

1. The Complaint fails to provide adequate notice of infringement. ............. 12

2. The Complaint acknowledges that third-party providers are licensed ........ 15

D.  Plaintiff's Indirect Infringement Claim is Implausible ................................. 16

1. Pre-suit indirect infringement is not plausibly alleged. ......................... 16

2. Post-suit indirect infringement is not plausibly alleged. ........................ 16

a.  Induced Infringement .................................................... 16

b.  Contributory Infringement ............................................. 17

IV. CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                                                                          **Page(s)**

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
    620 F. App'x 934 (Fed. Cir. 2015) ...............................................................................12, 13

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016).....................................................................................4

*Affinity Labs of Tex., LLC v. Toyota Motor of N. Am.*,
    No. W:13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ................................16, 17

*Alice Corp. v. CLS Bank Int'l*,
    573 U.S. 208 (2014).......................................................................................... *passim*

*Apple Inc. v. Andrei Iancu*,
    No. 6:14-CV-752, 2015 WL 4910427 (N.D. Cal. Aug. 17, 2015) ..........................................17

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017)...............................................................................10, 11

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
    950 F.3d 860 (Fed. Cir. 2020)....................................................................................10

*Artrip v. Ball Corp.*,
    735 F. App'x 708 (Fed. Cir. 2018) .............................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................1, 16

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016).....................................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................16

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018).....................................................................................4

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) ....................................................................................12

*Bridge and Post, Inc. v. Verizon Commc'ns, Inc.*,
    778 F. App'x 882 (Fed. Cir. 2019) ...............................................................................4

*BSG Tech. L.L.C. v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018)..................................................................................4, 7

*BuySafe, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014)......................................................................................5

*CardioNet, LLC v. InfoBionic, Inc.*,
    955 F.3d 1358 (Fed. Cir. 2020)......................................................................................4

*Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*,
    No. 19-CV-05784, 2020 WL 7392909 (N.D. Cal. July 23, 2020)..........................12, 13, 15

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019).....................................................................................5, 9

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    859 F.3d 1352 (Fed. Cir. 2017)....................................................................................16

*CTD Networks, LLC v. Google, LLC*,
    688 F. Supp. 3d 490 (W.D. Tex. 2023).........................................................................14

*CTD Networks LLC v. Microsoft Corp.*,
    No. W-22-CV-01049, 2023 WL 5417141 (W.D. Tex. Aug. 22, 2023)...............................16

*Customedia Techs., LLC v. Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020)...................................................................................4, 7

*Dunlap v. Schofield*,
    152 U.S. 244 (1894)....................................................................................................10

*e-Watch Inc. v. Avigilon Corp.*,
    No. H-13-0347, 2013 WL 5231521 (S.D. Tex. Sept. 13, 2013)........................................11

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)...........................................................................6, 7, 8, 9

*i2 Techs., Inc. v. Oracle Corp.*,
    No. 609 CV 194, 2010 WL 8669837 (E.D. Tex. Mar. 29, 2010).......................................14

*Intell. Ventures I LLC v. Sw. Airlines Co.*,
    No. 7:24-cv-00277-ADA (W.D. Tex. May 23, 2025) ......................................................11

*Intell. Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)...................................................................................7, 9

*Joao Control & Monitoring Sys. of Tex., LLC v. Playboy Enters. Inc.*,
    No. 6:09CV499, 2010 WL 11628855 (E.D. Tex. Mar. 29, 2010).......................................17

*JVC Kenwood Corp. v. Nero, Inc.*,
    797 F.3d 1039 (Fed. Cir. 2015)....................................................................................15

*Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prods., Inc.*,
  No. 6:20-CV-00318, 2021 WL 4555802 (W.D. Tex. Oct. 4, 2021) ......................................16

*Lans v. Digital Equip. Corp.*,
  252 F.3d 1320 (Fed. Cir. 2001) ..........................................................................................11

*Lantiq N. Am., Inc. v. Ralink Tech. Corp.*,
  No. CV 11-00234, 2011 WL 2600747 (N.D. Cal. June 30, 2011) ........................................14

*Largan Precision Co. v. Genius Elec. Optical Co.*,
  646 F. App'x 946 (Fed. Cir. 2016) .......................................................................................17

*LS Cloud Storage Techs., LLC v. Amazon.com, Inc.*,
  No. 1:22-CV-1167, 2023 WL 2290291 (W.D. Tex. Feb. 27, 2023),
  *reconsideration denied*, No. 1:22-CV-1167, 2023 WL 6167604 (W.D. Tex.
  Sept. 21, 2023) .................................................................................................................13, 14

*Lyda v. CBS Corp.*,
  838 F.3d 1331 (Fed. Cir. 2016)..............................................................................................15

*MACOM Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*,
  No. 216CV02859, 2017 WL 3449596 (C.D. Cal. June 5, 2017)............................................14

*Maxwell v. J. Baker, Inc.*,
  86 F.3d 1098 (Fed. Cir. 1996)................................................................................................10

*MyMail, Ltd. v. ooVoo, LLC*,
  No. 2020-1825, 2021 WL 3671364 (Fed. Cir. Aug. 19, 2021) ................................................8

*Prism Techs., LLC v. AT&T Mobility, LLC*,
  No. 8:12CV122, 2012 WL 3867971 (D. Neb. Sept. 6, 2012) .................................................14

*Radar Indus., Inc. v. Cleveland Die & Mfg. Co.*,
  424 F. App'x 931 (Fed. Cir. 2011) .......................................................................................15

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)............................................................................................4, 6

*VDPP, LLC v. Volkswagen Grp. of Am., Inc.*,
  No. 4:23-CV-2961, 2024 WL 1313899 (S.D. Tex. Mar. 27, 2024) .......................................11

*Vega v. Maxim Integrated Prods., Inc.*,
  No. 5:15-CV-1138, 2016 WL 9450607 (W.D. Tex. June 14, 2016) ......................................14

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
  208 F.3d 981 (Fed. Cir. 2000)...............................................................................................12

*WirelessWerx IP LLC v. OnStar, LLC,*
    No. 2:23-CV-11501, 2024 WL 1607018 (E.D. Mich. Apr. 12, 2024) ............................12, 13

**Statutes**

35 U.S.C. § 101 ...........................................................................................................1, 3, 4, 10

35 U.S.C. § 271 ...........................................................................................................................11

35 U.S.C. § 284 ...........................................................................................................................11

35 U.S.C. § 287 ...................................................................................................................1, 10, 11

**Other Authorities**

Fed R. Civ. P. 8 ..........................................................................................................................16

Fed R. Civ. P. 12(b)(6) ........................................................................................................1, 4, 11

All emphasis is added unless otherwise noted.

## I.    INTRODUCTION

Southwest moves to dismiss the sole count of Plaintiff's Complaint (Dkt#1) under Rule 12(b)(6) for three independent reasons:

*First*, the claims of U.S. Patent No. 7,822,841 ("the '841 Patent") are ineligible under 35 U.S.C. § 101 and *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014). The claims—issued pre-*Alice*—purport to cover the abstract idea of hosting and monitoring computing clusters. The patent discloses no technical innovation, provides no implementation details, and relies entirely on standard hardware conventionally arranged. The '841 Patent fails both steps of the *Alice* test.

*Second*, Count I's request for pre-suit damages is improper because the Complaint does not plead compliance with the marking statute, 35 U.S.C. § 287. Plaintiff seeks damages for "past infringement" but does not allege that the patentee or any licensee marked relevant products or provided Southwest with actual notice before suit.

*Third*, Plaintiff's direct and indirect infringement claims fail the plausibility standard under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Complaint does not identify any specific Southwest product or service that allegedly infringes. Instead, it offers conclusory claim charts that map patent limitations to unnamed third-party software. The Complaint also concedes that many of those vendors are licensees, yet alleges no unlicensed use by Southwest itself. IV therefore fails to state a valid claim for relief.

## II.    BACKGROUND ON THE PATENT

The '841 Patent, titled *Method and System for Hosting Multiple, Customized Computing Clusters*, claims a system for hosting computer clusters for use by clients. Dkt#1-1. The alleged problem that the patent identifies, however, is a logistical problem, not a technological problem. "Before the invention," "multiple cluster systems" were already known and conventional, but such systems were "typically limited." *Id.* at 4:51–60. The "fundamental difficulties associated with

1

prior cluster systems," it says: "*clients* are required to host and manage the clusters that are located on their site or in their facilities." *Id.* at 5:7–11.

The patent's proposed solution is to *outsource* that burden. It describes a "hosted cluster system" that "may be provided at a *hosting* facility typically remote from users or clients." *Id.* at 5:12–15. Clients can "access their hosted cluster from a remote location *via . . . the Internet* or other network." *Id.* at 4:16–18. The purported invention is not a new kind of computer system, but a business model that offers "hosted clusters" that use "a network for communications with a corresponding client and monitoring equipment and/or software modules." *Id.* at 4:44–48. The patent characterizes the system as one "for providing clusters to users or 'clients' . . . that provide the computational assets or power that the clients demand while not presenting an unacceptable burden on the clients' resources." *Id.* at 2:45–49.

The "present invention" is described as "hosting a plurality of clusters that are each configured for a particular task . . . and optionally providing for configuration, access control, and monitoring." *Id.* at 2:57–63. But the only claimed difference from conventional cluster systems is location: the "cluster systems of the invention . . . are physically provided at one or more locations that are remote from the processing user or client's facilities." *Id.* at 4:10–14.

Claim 1—the sole independent claim and only claim referenced or charted with the Complaint—recites a generic system architecture for implementing this outsourcing model:

1. A computer system for hosting computing clusters for clients, comprising:

a private communications network linked to a public communications network;

a first cluster . . . in a first configuration . . . linked to the private communications network;

a second cluster . . . in a second configuration . . . linked to the private communications network; and

a monitoring system . . . ;

wherein the first configuration differs from the second configuration . . . ;

wherein the monitoring system comprises a main monitor . . . and further comprises monitors for each node . . . operating to check for hardware and software problems . . . and to report . . . problems to the main monitor.

Though the claim refers to clusters in different "configurations" and a "monitoring system," these elements are defined broadly and generically. The patent extends "to a[ny] particular type of cluster or to particular hardware and/or software components." *Id.* at 10:13–15. And the term "configuration" includes "the physical components," "the topology of the cluster," "the software running on the computing resources of the cluster," and "any clustering software utilized to manage the cluster." *Id.* at 10:41–49. The "monitoring system," meanwhile, "has two main components," which may consist of off-the-shelf tools such as "the Intelligent Platform Management Interface (IPMI)" and "Simple Network Management Protocol (SNMP)." *Id.* at 7:43–52. The patent does not disclose or claim any improvement to the "clusters," "computing resources," or "monitoring system."

The file history confirms the abstract nature of the claim. As originally filed, Claim 1 lacked any hardware limitations at all. Ex. B at 1. On February 25, 2010, the Examiner rejected original claims 1–8 under § 101, explaining that the system "does not contain components that are limited to hardware." Ex. A at 2–3. The applicant responded by adding references to "private and public networks" and requiring each cluster to include at least one "hardware processor." *Id.* While the Examiner accepted that was enough to overcome the rejection under then-prevailing standards, it clearly is irrelevant under modern § 101 precedent, as generic hardware references do not transform an abstract idea into a patent-eligible invention.

### III.    ARGUMENTS AND AUTHORITIES

**A.    The '841 Patent Is Invalid Under § 101.**

Under the two-step test in *Alice*, a patent claim is ineligible under 35 U.S.C. § 101 if (1) it is "directed to" a patent-ineligible concept, such as an abstract idea, and (2) it lacks any "inventive concept" sufficient to transform the abstract idea into a patent-eligible application. 573 U.S. at 217–18; *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166–67 (Fed. Cir. 2018). Although patent eligibility can turn on underlying facts, it remains a question of law and may be resolved on a Rule 12(b)(6) motion. *InvestPic*, 898 F.3d at 1166; *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

**1.    Claim 1 is directed to an abstract idea: remote hosting and monitoring.**

At step one of the *Alice* analysis, courts examine the claims in view of their language, the specification, and, if relevant, the prosecution history. *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372, 1374 (Fed. Cir. 2020). The focus is on the "claimed advance over the prior art." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016). To be patent eligible, the claims must improve "the functionality of the computer or network platform itself." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020). Simply invoking a computer as a tool to implement an abstract idea is not sufficient. *See BSG Tech. L.L.C. v. Buyseasons, Inc.*, 899 F.3d 1281, 1287–88 (Fed. Cir. 2018).

Claim 1 of the '841 Patent is directed to the abstract idea of remotely hosting and monitoring computer clusters. The supposed advance—offloading computing tasks to remote clusters and monitoring them—is itself an abstract business goal, not a technical improvement. The Federal Circuit has repeatedly held that "communicating requests to a remote server and receiving communications from that server, i.e. communication over a network," is an abstract idea. *Bridge and Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 892 (Fed. Cir. 2019)

(quoting *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766–67 (Fed. Cir. 2019)); *see also BuySafe, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("[T]hat a computer receives and sends information over a network—with no further specification—is not even arguably inventive.").

In *ChargePoint*, the claim involved a "control device" configured to "communicate requests . . . with a remote server and receive communications from the remote server" to enable the device to "turn electric supply on and off." 920 F.3d at 766. The Federal Circuit found this "nothing more than the abstract idea of communication over a network for interacting with a device." *Id.* at 768. Here, Claim 1 likewise recites a "system for hosting computing clusters for clients," which receives a "client task" over a "public communications network" and performs it using remote computing resources. Dkt#1-1 at Claim 1, 2:57–3:3, 6:64–7:8. And like *ChargePoint*, the patent itself frames the problem in business—not technical—terms: hosting clusters on site is expensive. *Id.* at 1:32–36. The abstract focus is further underscored by the functional language used throughout the claim: "perform[ing] a client task," "monitor[ing] for hardware and software problems," and "report[ing] the problems." *Id.* at 7:29–40.

Similarly, in *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, the Federal Circuit held ineligible claims directed to "streaming audio/visual data over a communication system like the internet." 874 F.3d 1329, 1333 (Fed. Cir. 2017). The claims described transmitting "streams of audio and/or visual information" to users "in response to selection signals," *id.* at 1334–35, but recited only functional results—"converting," "routing," and "monitoring"—with no "concrete technological implementation." *Id.* at 1337–38. The claims were abstract because they merely recited a generic network architecture performing routine tasks.

Like the above ineligible ideas, the '841 Patent describes a generic system that executes client-requested tasks using "computing resources" over a network. Dkt#1-1 at Claim 1, 2:57–3:3, 6:64–7:8. It contains no inventive architecture, no particularized implementation, and no improvement to computer functionality. Like the claims in *Two-Way Media*, it relies entirely on abstract functional language to describe desired outcomes without specifying how those outcomes are achieved.

The patent's "monitoring system" fares no better. As in *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018), the Federal Circuit has consistently held that "collecting information, analyzing it, and displaying certain results" is abstract when not tied to a technological improvement. *Id.* at 1167. In *InvestPic*, the court rejected claims that merely used "a plurality of processors" to perform "statistical analysis of investment information," where the patent described "off-the-shelf computer technology" and lacked any specific technological innovation. *Id.* at 1165, 1168. Here, Claim 1 describes two "clusters" configured to "perform a client task," monitored by a system that checks for "hardware and software problems" and "reports" them. Dkt#1-1 at Claim 1. The patent admits that standard tools such as SNMP and IPMI may be used to implement the monitoring. *Id.* at 7:43–52. As in *InvestPic*, this system merely uses conventional computers to perform abstract functions—monitoring and reporting—and is "not even arguably inventive." 898 F.3d at 1168.

Similarly, in *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016), the claims were directed to a method for "receiving a plurality of data streams," "detecting and analyzing events," and "displaying the event analysis results"—a classic example of abstract data processing. *Id.* at 1352, 1354. The court emphasized that the claimed advance was "a process of gathering and analyzing information . . . not any particular assertedly inventive technology." *Id.* at

1354. Like the monitoring system in *Elec. Power*, the '841 Patent recites a "cluster" system that receives "task[s]" from a "client," executes them using computing clusters, monitors their performance, and reports results to facility staff. Dkt#1-1 at Claim 1, 7:29–40, 8:49–54. It does not recite new data structures, new control mechanisms, or novel protocols—just an abstract process carried out using conventional computing tools.

Because the claims are not "directed to an improvement in the functionality of the computer or network platform itself," but instead invoke computers to carry out abstract hosting and monitoring functions, they fail *Alice* step one. *Customedia*, 951 F.3d at 1364.

### 2. Claim 1 lacks an inventive concept.

The '841 Patent also fails *Alice* step two because it "use[s] generic computers to perform generic computer functions." *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016). To transform an abstract idea into patent-eligible subject matter, a claim must recite an "inventive concept"—something "significantly more" than the ineligible concept itself. *Alice*, 573 U.S. at 217–18. "[C]onventional and well-understood techniques" do not qualify. *BSG Tech*, 899 F.3d at 1290–91. Nor does "computer implementation" supply an inventive concept if the process can be "carried out in existing computers long in use." *Alice*, 573 U.S. at 222.

The specification confirms that Claim 1's components are standard. It recites a system comprising a "public communications network,"[1] a "private communications network," two "clusters" of computing resources, and a "monitoring system." Dkt#1-1 at Claim 1. But none of these elements are novel. The "clusters" are simply "computing resources such as processing nodes, data storage, and a private communications network." *Id.* at 3:8–11. The "private communications network" is a standard corporate intranet—implemented using known protocols

---

[1] The "public communications network" is generally understood by the specification to mean the Internet. *See* Dkt#1-1 at 3:1–3; 4:16–18; 5:15–19.

such as "Gigabit Ethernet," "10 Gigabit Ethernet," "Infiniband™," or "Myrinet™." *Id.* at 5:12–25, 8:34–42.

The "monitoring system" is equally conventional. It "has two main components," both of which may be implemented using existing, off-the-shelf technologies: the "Intelligent Platform Management Interface (IPMI)" and "Simple Network Management Protocol (SNMP)." *Id.* at 7:43–52. These systems are not novel inventions but longstanding tools for monitoring system health and performance. Their inclusion confirms the absence of any technological advance.

Federal Circuit precedent forecloses any claim to inventiveness here. In *Two-Way Media*, the court rejected claims involving "conventional computer and network components operating according to their ordinary functions." 874 F.3d at 1339. Likewise, in *Elec. Power Grp.*, the court found no inventive concept in "off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." 830 F.3d at 1355. The same is true here: nothing in Claim 1 requires more than generic hardware and routine operations.

*MyMail, Ltd. v. ooVoo, LLC*, No. 2020-1825, 2021 WL 3671364 (Fed. Cir. Aug. 19, 2021), reinforces the point. There, claims involving a "user Internet device" and a "server"—used to transmit version information, receive update data, and install toolbar updates—were held ineligible because they merely involved "routine functions." *Id.* at *7. Similarly, Claim 1 here recites computers that "perform a client task," a monitoring system that "detects" issues, and a reporting function that alerts personnel—generic functionalities, performed in expected ways, with no asserted technological improvement.

The '841 Patent does not identify any non-conventional arrangement of elements. It claims a system where (1) two generic computing clusters are configured differently, (2) the clusters are

linked to a conventional intranet and to each other, and (3) a standard monitoring tool is used to report errors. That is a routine architecture for a managed data center, not an inventive concept.

Nor does Claim 1 recite any inventive combination of elements. "[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). But here, the ordered combination is itself conventional: two computing clusters—each linked to a private communications network—receive tasks from a public network and are monitored using generic software. That configuration reflects a routine deployment of computing resources within any commercial data center. The '841 Patent neither improves how clusters *function* nor introduces any new infrastructure or protocol.

As in *Elec. Power Grp.*, the claims "do not require any non-conventional and non-generic arrangement of known, conventional pieces," and instead merely perform "claimed information collection, analysis, and display functions on a set of generic computer components and display devices." 830 F.3d at 1355. No asserted "ordered combination" transforms the abstract idea into something patent-eligible.

The Federal Circuit's reasoning in *ChargePoint* is equally applicable. There, the court rejected claims that "merely add generic networking capabilities" to a pre-existing system. *ChargePoint*, 920 F.3d at 774–75. So too here: Claim 1 does not change how computer clusters, networks, or monitoring systems function. It merely applies conventional tools to achieve abstract results—task execution, fault detection, and reporting—without any "improvement to the functioning of the computer itself." *Alice*, 573 U.S. at 225.

In short, Claim 1 "relies on generic computing and networking components arranged in their conventional configuration." *Symantec*, 838 F.3d at 1315. It adds no inventive concept. It

combines standard systems in predictable ways to accomplish abstract goals—precisely the kind of claim the Supreme Court and Federal Circuit have repeatedly held ineligible under § 101.

Because Claim 1 fails both steps of the *Alice* inquiry, it is not directed to patent-eligible subject matter. Count I should be dismissed.

## B.    Plaintiff May Not Recover Pre-Suit Damages

To recover damages for alleged infringement occurring before the filing of a complaint, a patentee must comply with the patent marking statute, 35 U.S.C. § 287(a). This includes pleading and proving that the patented articles were marked or that the alleged infringer received actual pre-suit notice. The Federal Circuit has made clear that "[t]he patentee bears the burden of pleading and proving he complied with § 287." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017) ("*Arctic Cat I*") (citing *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996); *Dunlap v. Schofield*, 152 U.S. 244, 248 (1894)).

This burden extends to the acts of licensees.[2] A patentee must plead that it "made reasonable efforts to ensure compliance with the marking requirements by its licensees." *Arctic Cat I*, 876 F.3d at 1366; *see also Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("*Arctic Cat II*") ("A patentee's licensees must also comply with § 287. . . . It does not excuse [a] lack of marking that it is [the] licensee, rather than [the] patentee itself, who sold unmarked products.").

---

[2] IV admits it licenses the '841 Patent to cloud service providers, including Southwest's providers who have failed to mark their articles. *See* Dkt#1-2 at 2 n.1. (Plaintiff does not "accuse the public clouds of Defendant, to the extent those services are provided by a ***cloud provider with a license to Plaintiff's patent*** that covers Defendant's activities. Plaintiff does not accuse the public clouds of Defendant if those services are provided by a cloud provider with a license to Plaintiff's patent that covers Defendant's activities. ***Plaintiff will produce relevant license agreements in this litigation.***").

When a patentee does not plead compliance with § 287, courts may dismiss any claim for pre-suit damages under Rule 12(b)(6). *See, e.g.*, *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328–29 (Fed. Cir. 2001); *e-Watch Inc. v. Avigilon Corp.*, No. H-13-0347, 2013 WL 5231521, at *3 (S.D. Tex. Sept. 13, 2013) ("The Federal Circuit specifically allows addressing the § 287(a) issue through a motion to dismiss."); *VDPP, LLC v. Volkswagen Grp. of Am., Inc.*, No. 4:23-CV-2961, 2024 WL 1313899, at *5 (S.D. Tex. Mar. 27, 2024) ("VDPP has not shown that its licensees marked products covered by the '452 Patent.").

IV first notified Southwest of alleged infringement of the '841 Patent in May 2025 through a motion filed in a separate action. *See* Dkt#37 in *Intell. Ventures I LLC v. Sw. Airlines Co.*, No. 7:24-cv-00277-ADA (W.D. Tex. May 23, 2025). The Complaint in this case does not allege that IV or any licensee marked patented articles, nor does it allege that IV provided actual pre-suit notice to Southwest. *See* Dkt#1.

The absence of any marking allegations is fatal to IV's claim for pre-suit damages. IV has not alleged that any covered products were marked or that reasonable efforts were made to ensure licensee compliance. Nor has IV pleaded any basis for exemption from § 287. *Id.* Accordingly, IV has not met its burden under *Arctic Cat* and may not recover pre-suit damages as a matter of law.

The Court should therefore dismiss Count I's request for damages for any alleged infringement prior to the filing of the Complaint.[3]

## C.    Plaintiff's Direct Infringement Claim is Implausible

Direct infringement requires that a defendant, without authority, "makes, uses, offers to sell, or sells any patented invention" within the United States during the patent term. 35 U.S.C.

---

[3] *See* Dkt#1 at 13¶D (requesting relief, including "[a] judgment that awards Plaintiff all appropriate damages under 35 U.S.C. § 284 for Defendant's *past infringement* with respect to the Patent-in-Suit.").

§ 271(a). A complaint must identify "what activity . . . is being accused of infringement" and "some allegation of specific services or products of the defendants which are being accused." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021); *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 937 (Fed. Cir. 2015).

A bare assertion that unspecified "activities, methods and procedures" infringe a patent, without factual content to identify the accused product or conduct, fails to meet this standard. *Carpenter*, 620 F. App'x at 937 ("It is not enough to say 'you infringe my patent.'"). The Federal Circuit and district courts routinely dismiss such claims. *See, e.g.*, *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000).

Courts have also rejected complaints that merely reference third-party software without alleging the defendant's use. In *WirelessWerx IP LLC v. OnStar, LLC*, the court found allegations insufficient where the claim chart described "infringement by the 'Accused Products'" using an app "not alleged to be used by OnStar." No. 2:23-CV-11501, 2024 WL 1607018, at *10 (E.D. Mich. Apr. 12, 2024). Similarly, in *Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, generic references to "any/all Farasis products" did not "identify the Accused Products" or support a reasonable inference of infringement. No. 19-CV-05784, 2020 WL 7392909, at *4 (N.D. Cal. July 23, 2020).

### 1.     The Complaint fails to provide adequate notice of infringement.

Plaintiff asserts that a third-party software platform—Kubernetes—practices the '841 Patent. *See generally* Dkt#1-2. Plaintiff then alleges, without identifying any specific accused product or service, that Southwest "offers . . . services and technologies that use" Kubernetes. Dkt#1 ¶23. Count I asserts that:

> Southwest, without authorization or license from IV, has directly infringed, and
> continues to directly infringe, literally and/or by the doctrine of equivalents,
> individually and/or jointly, the '841 Patent, by making, utilizing, servicing, testing,

distributing, selling offering, and/or offering for sale the **Accused Products and Services** that infringe the '841 Patent, ***including but not limited to at least*** the **Accused Products and Services** identified in the example chart incorporated. . . .

*Id.* at ¶27.

The Complaint defines "Accused Products and Services" as including all Southwest "products, services, and technologies" that it "makes, utilizes, services, tests, distributes, sells, offers, and/or offers for sale" in Texas and the Western District. *Id.* at ¶5. Beyond this broad language, Plaintiff alleges that "all past, current, and future systems and services" are accused if they either "operate in the same or substantially similar manner" or "have the same or substantially similar features." Dkt#1-2 at 2. Plaintiff further disclaims any limitation, stating that even the systems referenced in its chart are only examples. *See, e.g.*, Dkt#1 ¶27.

This pleading is insufficient. As in *Carpenter*, *OnStar*, and *Celgard*, the Complaint offers no "specific services or products of the defendants which are being accused." *Carpenter*, 620 F. App'x at 937. The Complaint instead relies on the presence of a third-party platform and a sweeping assertion that all of Southwest's unspecified systems and services—past, present, and future—are implicated. *See, e.g.*, Dkt#1 ¶¶5, 27; Dkt#1-2 at 2.

Such vague accusations deprive Southwest of fair notice. The Complaint's open-ended references could encompass the entirety of Southwest's airline and avionic operations, but it offers no factual detail about what conduct allegedly infringes. *See Artrip v. Ball Corp.*, 735 F. App'x 708, 714–15 (Fed. Cir. 2018) (finding that a complaint must provide "notice as to what [the defendant] must defend").

Federal courts routinely dismiss complaints that, like this one, fail to identify a specific product, service, or use case. *See, e.g.*, *LS Cloud Storage Techs., LLC v. Amazon.com, Inc.*, No. 1:22-CV-1167, 2023 WL 2290291, at *3–4 (W.D. Tex. Feb. 27, 2023) (dismissing claims where no specific infringing functionality was identified), *reconsideration denied*, No. 1:22-CV-1167,

13

2023 WL 6167604 (W.D. Tex. Sept. 21, 2023); *i2 Techs., Inc. v. Oracle Corp.*, No. 609 CV 194, 2010 WL 8669837, at *3 (E.D. Tex. Mar. 29, 2010) (requiring identification of "accused products or services for each of the patents-in-suit"); *Prism Techs., LLC v. AT&T Mobility, LLC*, No. 8:12CV122, 2012 WL 3867971, at *5 (D. Neb. Sept. 6, 2012) (dismissing where allegations covered "essentially AT&T's entire business"); *MACOM Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*, No. 216CV02859, 2017 WL 3449596, at *5 (C.D. Cal. June 5, 2017) (same); *Lantiq N. Am., Inc. v. Ralink Tech. Corp.*, No. CV 11-00234, 2011 WL 2600747, at *6–7 (N.D. Cal. June 30, 2011).

This vagueness is especially problematic given the complexity of Kubernetes and similar cloud-based systems. As the court noted in *LS Cloud Storage*, "Given the complexity of the cloud storage systems, [a] [p]laintiff must show that infringement is a reasonable inference to draw." 2023 WL 2290291, at *1. The Complaint does not allege how Southwest's systems use Kubernetes in an infringing way, nor does it identify any act that meets the elements of any asserted claim.

The Complaint thus fails both pleading standards and basic fairness. *See Vega v. Maxim Integrated Prods., Inc.*, No. 5:15-CV-1138, 2016 WL 9450607, at *3–4 (W.D. Tex. June 14, 2016) (dismissing where plaintiffs failed to allege any specific product or describe how any conduct infringed). Southwest should not be forced to guess which of its many activities might be at issue. The Court should dismiss Count I in its entirety for failure to provide the required notice of direct infringement.[4]

---

[4] When the direct infringement claims are dismissed, the claims for enhanced damages must also be dismissed. *See* Dkt#1 ¶39; *CTD Networks, LLC v. Google, LLC*, 688 F. Supp. 3d 490, 503 (W.D. Tex. 2023).

## 2. The Complaint acknowledges that third-party providers are licensed.[5]

The Complaint admits that certain upstream Kubernetes providers are already licensed, but fails to identify who those providers are. *See, e.g.*, Dkt#1-2 at 2 n.1. This concession undercuts Plaintiff's infringement theory, which relies on speculation that some unlicensed uses might exist somewhere in Southwest's systems. *See* Dkt#1-2 at 2.[6] The direct infringement–license analysis in *JVC Kenwood* is instructive. There, JVC (patentee) alleged that end users of Nero's software must necessarily infringe its patents when used with standards-compliant DVD or Blu-ray discs. *JVC Kenwood Corp. v. Nero, Inc.*, 797 F.3d 1039, 1043–45 (Fed. Cir. 2015). The asserted patents, however, were included in the licensing pools for DVD and Blu-ray disc products. *Id.* The district court held, and the Federal Circuit affirmed, that "*without specific allegations* and evidence *showing use of unlicensed optical discs*, Nero has established a complete defense to all of JVC's allegations of infringement under the Patents." *Id.* at 1045. In doing so, the Federal Circuit *rejected* "JVC's argument that it was not its burden to make such a showing." *Id.*

Plaintiff's reliance on "information and belief" pleading further highlights the speculative nature of its claims. As courts have recognized, such language "creates an inference that [Plaintiff] likely lacks knowledge of the underlying facts to support the assertion[s], and [is] instead engaging in speculation to an undue degree." *Celgard*, 2020 WL 7392909, at *5. While Plaintiff suggests it will "provide relevant license agreements for cloud providers in discovery," Dkt#1-2 at 2 n.1, litigation cannot proceed without a plausible pleading. As the Supreme Court has made clear, "[A]

---

[5] To the extent the Complaint attempts to allege joint infringement, (*e.g.*, Dkt#1 ¶35), it fails to state a claim because it does not identify any specific third parties who are part of the infringement or allege the requisite direction or control. *See Lyda v. CBS Corp.*, 838 F.3d 1331, 1338–39 (Fed. Cir. 2016).

[6] *See Radar Indus., Inc. v. Cleveland Die & Mfg. Co.*, 424 F. App'x 931, 933 (Fed. Cir. 2011) ("An express or implied license is a defense to infringement.").

district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007); *Iqbal*, 556 U.S. at 678–79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

### D.      Plaintiff's Indirect Infringement Claim is Implausible

To state a claim for indirect infringement, a plaintiff must plausibly allege both (1) direct infringement by a third party and (2) that the defendant knew of the patent and intended to cause the infringement. *Affinity Labs of Tex., LLC v. Toyota Motor of N. Am.*, No. W:13-CV-365, 2014 WL 2892285, at *2 (W.D. Tex. May 12, 2014). Contributory infringement further requires that the accused component be a material part of the invention, lack substantial non-infringing uses, and be sold with knowledge of its infringing purpose. *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1363 (Fed. Cir. 2017). Indirect infringement claims require that the defendant knew of the patent and that third-party acts infringed it. *CTD Networks LLC v. Microsoft Corp.*, No. W-22-CV-01049, 2023 WL 5417141, at *9 (W.D. Tex. Aug. 22, 2023).

#### 1.      Pre-suit indirect infringement is not plausibly alleged.

The Complaint alleges that Southwest was "willfully blind" to the existence of the asserted patents. But willful blindness requires affirmative steps to avoid learning of the patents, not mere inaction. *Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prods., Inc.*, No. 6:20-CV-00318, 2021 WL 4555802, at *2 (W.D. Tex. Oct. 4, 2021). The Complaint contains no such allegations. Pre-suit indirect infringement is therefore not plausible.

#### 2.      Post-suit indirect infringement is not plausibly alleged.

##### a.      Induced Infringement

To state a claim for inducement, a plaintiff must identify a specific accused product or service and allege facts showing the defendant took active steps to encourage infringement with

the specific intent to do so. *Joao Control & Monitoring Sys. of Tex., LLC v. Playboy Enters. Inc.*, No. 6:09CV499, 2010 WL 11628855, at *3 (E.D. Tex. Mar. 29, 2010). Here, Plaintiff makes only generic assertions that Southwest "encourages" or "instructs" others to infringe through advertising or promotion. These conclusory statements lack the factual support necessary to show specific intent. *Largan Precision Co. v. Genius Elec. Optical Co.*, 646 F. App'x 946, 948 (Fed. Cir. 2016).

Nor do the claim charts provide evidence—such as documentation, screenshots, or promotional materials—linking Southwest to acts of inducement. *Affinity Labs*, 2014 WL 2892285, at *7–8. Without identifying a specific product or act of inducement, the Complaint fails to state a plausible claim.

### b.    Contributory Infringement

Plaintiff's contributory infringement theory fails for similar reasons. The Complaint does not identify any specific component sold or supplied by Southwest that allegedly has no substantial non-infringing use. Without identifying the accused component or demonstrating that it is not capable of lawful use, Plaintiff cannot state a plausible claim. *See Apple Inc. v. Andrei Iancu*, No. 6:14-CV-752, 2015 WL 4910427, at *5 (N.D. Cal. Aug. 17, 2015). Moreover, Plaintiff's concession that at least some Kubernetes providers are licensed further undermines any inference that the accused software is categorically infringing.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Southwest Airlines Co. respectfully requests that the Court dismiss Plaintiff's Complaint.

Date: June 24, 2025

Respectfully submitted,

*/s/ S. Wallace Dunwoody*
Michael C. Wilson
State Bar No. 21704590
mwilson@munckwilson.com
S. Wallace Dunwoody
State Bar No. 24040838
wdunwoody@munckwilson.com
**Munck Wilson Mandala, LLP**
2000 McKinney Avenue, Suite 1900
Dallas, TX 75201
(972) 628-3600
(972) 628-3616 fax

David G. Henry
Texas Bar. No. 09479355
dhenry@munckwilson.com
**Munck Wilson Mandala, LLP**
510 Austin Avenue, Suite 3100
Waco, Texas 76701
(254) 362-2300
(254) 362-2304 fax

Tri T. Truong
Texas State Bar No. 24102969
ttruong@munckwilson.com
**Munck Wilson Mandala, LLP**
807 Las Cimas Parkway, Suite 300
Austin, Texas 78756
737-201-1600
737-201-1601 fax

*Attorneys for Southwest Airlines Co.*

## CERTIFICATE OF CONFERENCE

I, the undersigned counsel, hereby certify that I conferred with counsel for Plaintiff on June 20, 2025, regarding the relief requested herein. Plaintiff is opposed to the relief requested by this motion.

*/s/ S. Wallace Dunwoody*
S. Wallace Dunwoody

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 24, 2025, the foregoing document has been served on all counsel of record via the Court's CM/ECF system.

*/s/ S. Wallace Dunwoody*
S. Wallace Dunwoody

19